UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| DOUGLAS B. STALLEY, on behalf ) <br> of the United States of America ) <br> ) <br> V. ) <br> ) <br> MOUNTAIN STATES HEALTH ) <br> ALLIANCE, *ETC*., *ET AL.* ) | NO. 2:06-CV-216 |

and

| | |
|---|---|
| DOUGLAS B. STALLEY, on behalf ) <br> of the United States of America ) <br> ) <br> V. ) <br> ) <br> WELLMONT HEALTH SYSTEM, ) <br> *ETC*., *ET AL.* ) | NO. 2:06-CV-217 |

## **REPORT AND RECOMMENDATION**

After the dismissal of these suits, the defendants in each case filed motions for sanctions under Rule 11, F.R.Civ. P., and 28 U.S.C. § 1927.[1] Those motions for sanctions were referred to the magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[2]

Although the plaintiff requested oral argument on the motions, under the circumstances of these cases as discussed hereafter, the magistrate judge concludes that oral

---

[1] Document 48, 2:06-CV-48, 2:06-CV-216; Doc. 47, 2:06-CV-217.

[2] Doc. 55, No. 2:06-CV-216; Doc. 54, 2:06-CV-217.

argument would add nothing to the briefs and supporting authorities filed by the parties.

These two suits, as well as three others in this district and one each in the Middle and Western Districts of Tennessee, were the same in every respect except for the identity of the defendants and the court in which filed. *Stalley v. Methodist Healthcare, et al.*, 517 F.3d 911, 914 (6th Cir. 2008). Indeed, Mr. Stalley filed at least fifty identical suits across the country against various hospitals and healthcare providers, each one asserting a claim "on behalf of the United States" under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y. The suits contended that the Medicare Secondary Payer Act is a *qui tam* statute that entitles any citizen, including Mr. Stalley, to act as a "private attorney general" to sue hospitals and other entities for violations of the Medicare Secondary Payer statute; specifically, for failure "to reimburse Medicare for unspecified payments that Medicare supposedly advanced to treat unspecified medical errors made with regard to unspecified Medicare beneficiaries at unspecified healthcare facilities owned by [the defendants]." *Stalley*, 517 F.3d at 914. Ultimately the district judge dismissed all five cases in this district under Rule 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure. Plaintiff's suits filed in the Middle and Western Districts of Tennessee likewise were dismissed.

The plaintiff appealed the dismissals of his suits, including those of his suits pending in other district courts in Tennessee. Those appeals were consolidated before the Sixth Circuit Court of Appeals because each case presented "identical issues of law and fact as to all Appellees." *Stalley*, 517 F.3d at 915. Ultimately, the dismissals were affirmed by the appellate court. Since the opinion of the Sixth Circuit Court of Appeals bears directly upon

the motions for sanctions pending before this court, a portion of that court's opinion is reproduced herein:

> **B. Sanctions are appropriate against Stalley and his counsel**.
>
> Rather than acting as a private attorney general to benefit the United States, Stalley proceeds in these cases as a "self-appointed bounty hunter," *see Stalley v. Sumner Regional Health Systems, Inc.,* No. 06-0074, 2007 WL 173686, *1, 2007 U.S. Dist. LEXIS 4912, at *2 (M.D.Tenn. Jan. 18, 2007), whose goal, apparently, is to profit at the expense of Appellees. As counsel admitted at oral argument, not even so much as a law review article, much less a case, supports Stalley's claim that the MSP is a *qui tam* statute, while numerous cases explicitly hold to the contrary. Stalley cannot point to even a passing reference in the legislative history of the MSP to bolster his position. He has literally no support whatsoever for his argument. Moreover, Stalley-along with his partner in litigation, Erin Brockovich-has made the exact same claims numerous times in other jurisdictions and been unanimously turned away.[FN4] Stalley's claims before this court are utterly frivolous, and we are troubled that any attorney would elect to advance them.
>
>> FN4. We note from Appellee Methodist's brief, for example, the existence of no less than 18 district court cases, filed by either Stalley or Brockovich, rejecting the legal claims herein asserted.
>
> We have the inherent power to punish with sanctions those who litigate in bad faith. *Jones v. Continental Corp.,* 789 F.2d 1225, 1229 (6th Cir.1986) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). These powers come not from rule or statute but from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc*., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting Link v. Wabash R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). Our inherent powers include the ability to "fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44, 111 S.Ct. 2123. Furthermore, we also have statutory authority to assess costs and attorney's fees against any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. A "court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Chambers,* 501 U.S. at 45-46, 111 S.Ct. 2123 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S.

> 240, 258-59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Before awarding attorney's fees to the prevailing party under the "bad faith exception," we must find that "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 512 (6th Cir.2002) (internal citations omitted). Our inherent power is not limited to sanctioning attorneys only; we can sanction a party as well. *See Chambers,* 501 U.S. at 48, 111 S.Ct. 2123. While we should exercise this power with restraint and discretion, *Id.* at 44, 111 S.Ct. 2123, we should not shrink from exercising it when sanctions are justified by the circumstances.
>
> Without question, Stalley and his attorneys know that he has no standing to raise the claims he asserts against the Appellees. Stalley cited no legal authority for his contention that the MSP is a *qui tam* statute, and he has failed to persuade a single one of the many other courts in which he has raised this claim. He cannot claim that he is arguing for a good-faith extension of the law, because Congress must explicitly create *qui tam* statutes. *See United Seniors,* 500 F.3d at 23-24 ("There is presently no common-law right to bring a *qui tam* action, which is strictly the creature of statute."). We have no power to create a *qui tam* cause of action where none exists. Therefore, we can come to only one conclusion: Stalley and his attorneys have continued to pursue these claims against Appellees for an improper purpose.

517 F.3d at 919.

There are three potential bases upon which sanctions may be imposed for filing and pursuing a frivolous suit: Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the "inherent power" of the court.

### *F.R. Civ. P. 11*

As far as a plaintiff is concerned, Rule 11(b)(2) provides that the plaintiff's attorney certifies that the claims and other contentions in the complaint he has filed "are warranted

4

by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law." The Sixth Circuit Court of Appeals already has decided that plaintiff's claims were not warranted by existing law or by a nonfrivolous argument for extending existing law.[3] Therefore, plaintiff's attorney violated Rule 11(b)(2), and sanctions are warranted.

The 1993 amendments to Rule 11 made it clear that the primary purpose of Rule 11 is to deter improper behavior, not to compensate the party injured by the Rule 11 violation:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Rule 11(c)(4).

However, section 11(c)(4) also recognizes that there could be situations egregious enough that an award of attorney's fees and other expenses would be appropriate "for effective deterrence." The Sixth Circuit has held that counsel's conduct in this case justified an award of attorney's fees as an appropriate sanction and that effectively ends any further inquiry regarding the frivolousness of this case.

However, Rule 11(c)(5) provides that the court must not impose a monetary sanction for a violation of Rule 11(b)(2) against a *represented* party. In other words, when the offending party is represented by a lawyer, only the lawyer may be burdened with a monetary

---

[3] 517 F.3d at 920.

5

sanction for a violation of Rule 11(b)(2).

### *18 U.S.C. § 1927*

The statute reads as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The plain language of this statute suggests that attorneys' fees may only be imposed upon the lawyer, not the litigant.

### *The Inherent Power of the Court*

Absent a statute authorizing an award of attorney's fees to the opposing party, the so-called "American Rule" prohibits the shifting of attorney's fees. *See, e.g., Toth v. United Auto,* 743 F.2d 398, 405 (6th Cir. 1984*).* However, there is an exception to this rule which allows federal courts to exercise their "inherent power" to assess attorney's fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Stalley*, 517 F.3d at 920. [citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)]. This inherent power includes the authority to sanction the party as well as his attorney. It was on the basis of this "inherent power" of the court that the Sixth Circuit Court of Appeals ordered plaintiff and his attorney to pay the attorneys' fees incurred by the defendants with regard to the appeals.

That the defendants' motions seek sanctions under Rule 11 and 28 U.S.C. § 1987 is no impediment to this court awarding attorney's fees under the inherent power of the court. As evidenced by the action of the Court of Appeals, an imposition of sanctions based on the

6

"inherent power" of the court requires no predicate motion or action by the aggrieved party.

*PLAINTIFF'S RESPONSE*

The thrust of plaintiff's response to the motions for sanctions is that (1) he and his attorney had a reasonable and good-faith belief at the time the complaints were filed that the suits were well-grounded both in fact and law, and the claims were not frivolous; and (2), in an effort to save parties and the court time and expense, plaintiff's counsel asked defendants to agree to a stay of these suits until the resolution of plaintiff's appeal of the dismissal of an identical suit he had filed in the Middle District of Tennessee.

*COUNSEL'S ASSERTION OF GOOD FAITH*

There are many questions that cry out for answers: How many *similar* suits has Mr. Stalley filed over the years? Did attorney Knight or her law firm represent Mr. Stalley in those suits? Has attorney Knight or her firm represented plaintiffs other than Mr. Stalley (and Ms. Brockovich) in similar suits? If there were such suits, where were they filed, and what relief did they seek? What monies has Mr. Stalley obtained over the years as a result of filing such suits? What fees have attorney Knight and her firm generated by filing such suits? What specific facts did plaintiff and his attorneys have before these suits were filed to support their allegations in the complaints? Why did Mr. Stalley and his attorneys sue some hospitals, but not others?

Normally, the foregoing questions, and more, would be an appropriate inquiry with respect to the defendants' motions for sanctions *except for one overriding circumstance*: the opinion of the Sixth Circuit Court of Appeals. The Sixth Circuit's opinion is blistering,

7

to say the least; it describes these suits as "utterly frivolous," and expresses dismay "that any attorney would elect to advance [Stalley's claims]."[4] The Sixth Circuit has held that Mr. Stalley and his lawyers knew that Stalley had no standing to raise the claims that he asserted against these defendants, and that he had no good faith argument for an extension of the law.[5] The Sixth Circuit flatly held that Mr. Stalley and his attorneys pursued these claims against the defendant for an "improper purpose."[6] By arguing that plaintiff and his attorney had a good-faith belief that these suits were supported by the law and facts, plaintiff's counsel implicitly asks this court to ignore the Sixth Circuit's opinion, which of course is now the "law of the case." Even if this court disagreed with the Court of Appeals (which this magistrate judge does not), this court is bound by the Sixth Circuit's findings that the suits were frivolous and without merit, and pursued for an improper purpose. Any question regarding counsel's good-faith is foreclosed by the opinion of the Sixth Circuit.

### *PLAINTIFF'S REQUEST FOR A STAY*

Plaintiff argues that his counsel, while the motions to dismiss in these cases were pending, asked the defendants to agree to a stay of the proceedings until the Sixth Circuit Court of Appeals ruled upon plaintiff's appeal of the dismissal of identical suits he had filed in the Middle and Western Districts of Tennessee. Plaintiff says that he and his counsel "were always mindful of the need to conserve the Court's and the parties' limited

---

[4] 517 F.3d at 919-20.

[5] *Id.* at 920.

[6] *Id.*

8

resources," and for that reason requested a stay.[7]

A stay of these cases would have saved the defendants and their attorneys little or no time and expense; all the work had already been done. As far as saving the court's time is concerned, reference is made to the memorandum opinion of Chief Judge Collier: "This Court declines to stay its opinion and will join its sister courts in dismissing Plaintiff's actions. Judicial efficiency is served by dealing with these five pending cases, and allowing Plaintiff to consolidate the appeal if he so chooses."

Respectfully, this magistrate judge is missing the point plaintiff is trying to make by his argument that he requested a stay which the defendants resisted. Certainly, it has no significance with regard to lack of merit of these cases, the frivolousness of plaintiff's claims, and plaintiff's improper motive in pursuing these suits.

### *SANCTIONS*

Pursuant to the order of the magistrate judge,[8] the attorneys for each of these defendants have filed affidavits setting forth the attorneys' fees charged to their clients. For legal services rendered prior to the appellate stage, Wellmont incurred legal fees and expenses totaling $152,472.36.[9] Mountain States incurred total attorneys' fees and legal

---

[7]Doc. 62, p. 11.

[8]Doc. 57, No. 2:06-CV-216; Doc. 58, No. 2:06-CV-217.

[9]Doc. 59-2, Case No. 2:06-CV-217.

9

costs in the amount of $146,443.85.[10] The plaintiff has not called into question the legitimacy or reasonableness of these fees and expenses. Thus, the only questions that remain are: (1) the appropriate sanctions to be imposed, (2) upon whom those sanctions should be imposed, and (3) the amount of the sanctions.

As earlier discussed, the court may not impose a monetary sanction against a represented party for a violation of Rule 11(b)(2). Similarly, an award of attorneys' fees as a sanction under 18 U.S.C.§ 1927 may be imposed only upon the offending party's lawyer. However, in the cases before this court, imposing sanctions upon Mr. Stalley, as well as his lawyer, is appropriate. For one thing, the Sixth Circuit sanctioned Mr. Stalley in addition to his attorney. For another matter, Mr. Stalley is a "professional plaintiff" or, as described in the *Stalley* opinion, a "self-appointed bounty hunter." These suits smacked of a gambling endeavor; Mr. Stalley suffered no personal injury attributable to the defendant's alleged violations of the Medicare Secondary Payer Act. He lent his name to these fifty suits and stood to profit handsomely if the suits were successful. But, unfortunately from Mr. Stalley's perspective, he lost his gamble, and he should not be allowed to pull his bet off the table, so to speak.

Bearing in mind that these suits were utterly frivolous and lacking any merit whatsoever, one question cannot be avoided: Why should the defendants be forced to bear any of the costs necessitated by the filing of these suits?

---

[10]Doc. 58, Case No. 2:06-CV-216.

It is respectfully recommended to the court, *pursuant to the inherent power of this court*, that Mr. Stalley and his attorney, jointly and severally, be ordered to pay the attorneys' fees and related expenses incurred by the defendants in their defense of these cases through the trial level: $152,472.36 to Wellmont Health System and $146,443.85 to Mountain States Health Alliance.[11]

Respectfully submitted,

                                             s/ Dennis H. Inman
                                      United States Magistrate Judge

---

[11]Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

11